UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE ARNOLD ENGINEERING CO., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 25-cv-12260-ADB |
| | * | |
| LIBERTY MUTUAL INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this dispute, The Arnold Engineering Co. ("Arnold"), an Illinois-based manufacturer of magnets, seeks insurance coverage from Liberty Mutual Insurance Company ("Liberty Mutual") for lawsuits that alleged that Arnold's manufacturing operations damaged the environment.  [ECF No. 1].  Before the Court are the parties' cross motions for partial summary judgment, which ask this Court to determine which law applies to the insurance policies at issue.  [ECF No. 27]; [ECF No. 30].  For the following reasons, the Court holds that Pennsylvania law applies.  Thus, Arnold's motion is **DENIED** and Liberty Mutual's cross motion is **GRANTED**.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the parties' joint stipulation, [ECF No. 26].

Arnold is an Illinois company that manufactures permanent magnets.  [ECF No. 26 ¶¶ 1–3].  Its operations have been and still are located only in Illinois, and Arnold has no employees and owns no property in Pennsylvania.  [ECF No. 26 ¶ 3]; see also [id. ¶¶ 17–20].  In 2013, the Illinois Attorney General sued Arnold in Illinois state court, alleging that contaminants in the local groundwater originated from Arnold's manufacturing facility in Marengo, Illinois.  [Id. ¶¶ 49–51].  Arnold resolved that lawsuit by entering into a Consent Order with the Illinois Environmental Protection Agency in 2016.  [Id. ¶¶ 52–55].  In 2018, Arnold was also named as a defendant in two lawsuits brought by Illinois citizens living near Arnold's Marengo facility, who alleged that the water in their homes became unsafe to drink or otherwise use due to contaminants in the local groundwater originating from the facility.  [Id. ¶¶ 56, 59].

From 1946 to 1986, Arnold was a wholly owned subsidiary of Allegheny Ludlum Industries, Inc. ("Allegheny Ludlum"), later known as Allegheny International, a company headquartered in Pennsylvania.  [ECF No. 26 ¶¶ 4–6].  From 1986 to 2005, Arnold was a wholly owned subsidiary of SPS Technologies, Inc. ("SPS"), a company likewise headquartered in Pennsylvania.  [Id. ¶¶ 8–10].  In 2005, Arnold was sold to a private-equity firm, and it no longer has any corporate relationship with Allegheny International or SPS.  [Id. ¶¶ 10, 14].

Arnold's parent companies purchased from Liberty Mutual comprehensive general liability policies covering periods between 1976 and 1987, under which Arnold, as their subsidiary, qualified as a "Named Insured."  [ECF No. 26 ¶¶ 21–22, 24, 35–36].  The first set of policies were issued to Allegheny Ludlum and later Allegheny International, which were

identified in Item 1 of the Declarations of each policy as the "Named Insured." [Id. ¶¶ 21–24]; see also, e.g., [ECF No. 1-4 at 2]; [ECF No. 1-8 at 2]; amendatory endorsements to the policies also defined the term "Named Insured" to include certain other specified entities and any entity in which Allegheny Ludlum or later Allegheny International owned an interest of more than 50 per cent, e.g., [ECF No. 1-4 at 12]; [ECF No. 1-8 at 4].[1]  None of the policies contained a choice-of-law clause.  See [ECF No. 1-4]; [ECF No. 1-5]; [ECF No. 1-6]; [ECF No. 1-7]; [ECF No. 1-8]; [ECF No. 1-9]; [ECF No. 1-10]; [ECF No. 1-11]; [ECF No. 1-12]; [ECF No. 26-1].  Liberty Mutual sold the policies out of its Pittsburgh, Pennsylvania, office, and the sales representative responsible for negotiating the policies with Allegheny Ludlum and Allegheny International was based in Pittsburgh.  [ECF No. 26 ¶¶ 26–29].  Based on Liberty Mutual's standard practice at the time, Liberty Mutual would have sent the policies and the premium bills to Allegheny Ludlum and Allegheny International in Pennsylvania and would have received premium payments for the policies at its Pittsburgh office.  [Id. ¶¶ 32–34].

The second policy was issued to SPS, which was identified in Item 1 of the Declarations as the "Named Insured," [ECF No. 26 ¶ 35]; [ECF No. 1-13 at 2]; an endorsement defined the "Name of the Insured" to include any entity in which SPS owned an interest of more than 50 percent, [ECF No. 1-13 at 6].[2]  The policy did not include a choice-of-law clause.  See [ECF No. 1-13].  Liberty Mutual sold the policy out of its Bala Cynwyd, Pennsylvania, office, and the sales representative responsible for negotiating it with SPS was based in Bala Cynwyd.  [ECF No. 26 ¶ 38].  As with the earlier policies, under Liberty Mutual's standard practice, it would have sent

---

[1] Many of these entities were located in states other than Pennsylvania or Illinois.  See, e.g., [ECF No. 26-1 at 4].

[2] The policy's Schedule of Locations lists many locations in states other than Pennsylvania or Illinois.  [ECF No. 1-13 at 3].

the policy and the premium bills to SPS in Pennsylvania and would have received premium

payments at its Bala Cynwyd office.  [Id. ¶¶ 40–41].  Arnold was not involved in the negotiation

of the policies issued to Allegheny Ludlow, Allegheny International, or SPS and did not

communicate directly with Liberty Mutual about the policies while they were being negotiated or

in connection with their issuance.  [Id. ¶¶ 42–43].

### B.    Procedural History

Arnold initiated the instant action on August 12, 2025, asserting declaratory-judgment

and breach-of-contract claims against Liberty Mutual.  [ECF No. 1].  After Liberty Mutual

answered, [ECF No. 5], the parties proposed a schedule that provided for early resolution of the

question of which state's law governs the policies at issue in this action, [ECF No. 24], which the

Court allowed, [ECF No. 25].  On December 19, 2025, Arnold filed a motion for partial

summary judgment on the choice-of-law issue, [ECF No. 27], and, on January 30, 2026, Liberty

Mutual filed a cross motion for partial summary judgment, [ECF No. 30], and opposed Arnold's

motion, [ECF No. 31].  Arnold filed a reply in support of its motion and an opposition to Liberty

Mutual's cross motion, [ECF No. 32], and Liberty Mutual filed a surreply in support of its cross

motion, [ECF No. 33].

## II.    LEGAL STANDARD

A motion for partial summary judgment is an appropriate vehicle for resolving choice-of-

law issues where, as here, the facts bearing on the analysis are undisputed.  See, e.g., Alifax

Holding SpA v. Alcor Sci. Inc., 357 F. Supp. 3d 147, 154 (D.R.I. 2019); Reisch v. McGuigan,

745 F. Supp. 56, 58 (D. Mass. 1990).  Under Federal Rule of Civil Procedure 56(a), "the court

shall grant summary judgment" on a "claim or defense . . . or . . . part of [a] claim or defense" if

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## III.    DISCUSSION

Arnold argues that Illinois law applies to the policies, while Liberty Mutual advocates for the application of Pennsylvania law.  [ECF No. 28 at 14–27]; [ECF No. 31 at 16–28].  The parties agree that there is an "actual conflict . . . between the substantive laws of the interested jurisdictions," Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004).  [ECF No. 28 at 10–12]; [ECF No. 31 at 12–13].  Specifically, pollution exclusions in insurance policies are construed more narrowly in certain respects—that is, in a way that is more favorable to the insured—under Illinois law than they are under Pennsylvania law.  See, e.g., Chemetron Invs., Inc. v. Fid. & Cas. Co. of New York, 886 F. Supp. 1194, 1197–98 (W.D. Pa. 1994) (identifying actual conflict between treatment of "sudden and accidental exception" to pollution exclusion under Illinois and Pennsylvania law).  Because there is "at least one potentially relevant difference among the state laws," the Court must engage in a choice-of-law analysis.  DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 399 (D. Mass. 2017).  The choice-of-law analysis is governed by Massachusetts law.  Cheng v. Neumann, 106 F.4th 19, 25 (1st Cir. 2024) ("[F]ederal courts sitting in diversity apply the substantive law of the forum state . . . including its conflict of laws rules." (quoting Smith v. Prudential Ins. Co. of Am., 88 F.4th 40, 49 (1st Cir. 2023))).

Massachusetts follows a "functional approach" to choice-of-law issues, guided by the Restatement (Second) of Conflict of Laws (1971) ("Restatement").  Levin v. Dalva Bros., Inc., 459 F.3d 68, 74 (1st Cir. 2006); see also Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 669 (Mass. 1985) (calling Restatement an "obvious source of guidance").  When dealing with

insurance contracts, courts "look to Restatement § 193, as well as § 188 and the principles delineated in § 6." OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 57 N.E.3d 18, 20 (Mass. App. Ct. 2016), review denied, 80 N.E.3d 981 (Mass. 2017).  "The first step is to ascertain whether the provisions of § 193 will resolve the matter; if not, the next step is to employ the principles set forth in § 188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in § 6." Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 803 N.E.2d 750, 752–53 (Mass. App. Ct. 2004).  In general, Massachusetts courts prefer that one state's law govern multistate policies, "reason[ing] that the expectations of the parties as well as commercial realities require that the language in a single set of insurance policies should mean the same thing in every state." Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 30 (1st Cir. 1997); see also Narragansett, 57 N.E.3d at 24 ("[W]here multiple policies issued by multiple insurers are involved, the [Massachusetts] Supreme Judicial Court has expressed a preference that the law of one State govern their interpretation.").

Section 193 of the Restatement provides that insurance contracts are to be interpreted using the "local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties."  "[T]he location of the risk has less significance," however, "where the policy covers a group of risks that are scattered throughout two or more states."  Restatement § 193 cmt. b.  In such cases, "[t]he insured risk generally will be located in the State where the policy holder is domiciled." Narragansett, 57 N.E.3d at 21; see also id. ("[W]hile an underlying tort claim might properly be resolved under the laws of the State where the injury occurred, the obligation of an insurer to defend and indemnify against that claim is more appropriately

determined by reference to the insurance contract itself and the circumstances of its issuance." (citing W.R. Grace & Co. v. Hartford Accident & Indem. Co., 555 N.E.2d 214, 221 (Mass. 1990))); Admiral Ins. Co. v. Tocci Bldg. Corp., 594 F. Supp. 3d 201, 207 (D. Mass. 2022) (collecting cases), aff'd on other grounds, 120 F.4th 933 (1st Cir. 2024).  But see, e.g., Certain London Mkt. Co. Reinsurers v. Lamorak Ins. Co., 581 F. Supp. 3d 321, 326 (D. Mass. 2022) (applying English law even though "defendant policy holder was domiciled in the Commonwealth [of Massachusetts]" because "the situ [sic] of the risk is not particularly salient when, as here, the contract does not concern 'a specific physical thing'" (quoting Restatement § 188)); Bushkin, 473 N.E.2d at 668 ("decid[ing] . . . not to tie Massachusetts conflicts law to any specific choice-of-law doctrine," but instead "determin[ing] the choice-of-law question by assessing various choice-influencing considerations").

Here, the parties appear to agree that the risk insured under the policies was distributed across multiple states, such that § 193 does not resolve the choice-of-law analysis.  [ECF No. 28 at 19–20]; [ECF No. 31 at 13–14, 21–22].  The Court notes, however, that the entities listed first in the policies as the named insureds—Allegheny Ludlum, Allegheny International, and SPS, [ECF No. 26 ¶ 23]; [ECF No. 1-13 at 2]—were at all relevant times headquartered in Pennsylvania.  [ECF No. 26 ¶¶ 6, 8].  Thus, the parties who executed the policies likely understood that the insured risk would be located in Pennsylvania.  See Narragansett, 57 N.E.3d at 22 (considering "the ownership and managerial structure of the insured" in determining the location of the insured risk and giving weight to fact that entity was "listed first . . . as the named insured," followed by its affiliates and subsidiaries); Endurance Am. Ins. Co. v. John Moriarty & Assocs., Inc., No. 23-cv-12550, 2024 WL 3849670, at *6 (D. Mass. Aug. 16, 2024) ("In view of the principally Massachusetts-based residency of the policy holders, the parties most likely

understood that the insured risk would be located in Massachusetts.").  Nevertheless, because the policies provided insurance for entities located in multiple states, the Court "assess[es] which state has the most significant relationship to the issue by employing the factors indicated in § 188 and § 6" of the Restatement.  Clarendon, 803 N.E.2d at 753.

Section 188(2) highlights the following "contacts to be taken into account in applying the principles of § 6" in contract cases:  "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."  The comments to § 188 "suggest[] that particularly close attention be given to (1) the protection of the parties' justified expectations; and (2) the purpose sought to be achieved by the contract rules of the interested States . . . and the relation of each of these States to the parties and the transaction."  Clarendon, 804 N.E.2d at 753–54.  Section 6, in turn, lists seven general "factors relevant to the choice of the applicable rule of law":

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement § 6(2).

Here, employing the factors indicated in §§ 188 and 6 of the Restatement, the Court concludes that Pennsylvania has the strongest interest in having its substantive law applied to the policies at issue.  Liberty Mutual sold the policies at issue to Pennsylvania-based companies out of its Pennsylvania offices.  [ECF No. 26 ¶¶ 6, 8, 27, 38].  Although the parties have not stipulated that the negotiation of the policies took place in Pennsylvania, [id. ¶¶ 31, 39], that

seems highly likely, given that both the companies to which the policies were issued and the sales representatives responsible for negotiating them were based in Pennsylvania, [id. ¶¶ 6, 8, 28–29, 38].  Moreover, performance of the contracts took place, at least in part, in Pennsylvania, because it was there that Allegheny Ludlum, Allegheny International, and SPS would have paid the premiums on the policies.  [Id. ¶¶ 34, 41].  Thus, "despite the fact that the underlying claims involved in this case arose in [Illinois] in connection with a[n] [Illinois] operating company, . . . the insurance contracts as a whole, and the circumstances connected to their issuance, point toward the application of [Pennsylvania] law."  Narragansett, 57 N.E.3d at 23.  By contrast, applying Illinois law to the policies as a whole—or potentially applying the law of multiple states—would further neither justified expectations of the parties to the insurance contracts (Allegheny Ludlum, Allegheny International, SPS, and Liberty Mutual) nor Massachusetts's policy preference in favor of uniformity of coverage.[3]

---

[3] Arnold attempts to distinguish Narragansett by arguing that, in that case, there was an "undisputed factual record of a carefully-coordinated insurance program designed to ensure uniform treatment of operating subsidiaries going forward" and of "contemporaneous intent that [Massachusetts] law would govern future environmental claims."  [ECF No. 32 at 14]; see also [id. at 14–15 (arguing that, because none of Arnold's former parent entities exist today "their 'expectations' are unknown")].  Although Arnold is correct that the parties' stipulated facts provide only limited insight into the decisionmaking of Allegheny Ludlum, Allegheny International, SPS, and Liberty Mutual, see [id. at 13 n.6], the policies themselves are evidence of a coordinated insurance program that applied to both parent companies and operating subsidiaries.  See W.R. Grace, 555 N.E.2d at 221 (noting that determining coverage by reference to the law governing the interpretation of the insurance policy and its issuance "appears to conform to justified expectations"); Clarendon, 803 N.E.2d at 754 (discussing parties' "justified expectations" without reference to developed factual record).  Based on the policies, the Court has no difficulty in concluding that "the intention of the parties" to the insurance contracts at issue here "was uniformity of coverage," even in the absence of a more developed record.  Narragansett, 57 N.E.3d at 24; see also Minturn v. Monrad, 64 F.4th 9, 14 (1st Cir. 2023) (noting that, under Massachusetts law, courts "interpret the contract to effectuate the parties' discerned intent, which 'must be gathered from a fair construction of the contract as a whole'" (quoting VFC Partners 26, LLC v. Cadlerocks Centennial Drive, LLC, 735 F.3d 25, 29 (1st Cir. 2013))).

Arnold's arguments for applying Illinois law to the policies do not carry the day.  Its primary argument is that the claims in the lawsuits for which it seeks coverage arise from its operations in Illinois, and that Illinois has a strong interest in regulating the environment within its borders.  [ECF No. 28 at 14–23].  Under Massachusetts choice-of-law principles, however, an insurer's obligations are determined not "under the laws of the State where the injury occurred," but "by reference to the insurance contract itself and the circumstances of its issuance." Narragansett, 57 N.E. at 21.  Arnold also relies on A. Johnson & Co. v. Aetna Casualty & Surety Co., 741 F. Supp. 298, 302 (D. Mass. 1990), aff'd, 944 F.2d 66 (1st Cir. 1991), in which a sister session of this Court held that the law of the state where toxic waste was disposed applied to insurance policies implicated by the cleanup.  [ECF No. 28 at 17–19].  Unlike in A. Johnson, however, the parties here agree that the insured risk cannot be located principally in a single state.  See A. Johnson, 741 F. Supp. at 301 n.4.  More importantly, as noted supra, Massachusetts cases decided since A. Johnson have confirmed the Massachusetts Supreme Judicial Court's "doubt," acknowledged in A. Johnson, that "the law of the States in which the pollution sites lie will severally govern questions of policy coverage," id. (quoting United Techs. Corp. v. Liberty Mut. Ins. Co., 555 N.E.2d 224, 227 (Mass. 1990)).  See Narragansett, 57 N.E. at 21; HM Corr. Servs., Inc. v. Darwin Select Ins. Co., No. 170825BLS2, 2021 WL 6297973, at *10–11 (Mass. Super. Oct. 23, 2021) (applying Virginia law to determine coverage issues where underlying claims arose in Alabama and Mississippi but policyholders had their principal place of business in Virginia and policies were delivered there).  Based on these decisions, this Court's "informed prophecy," notwithstanding A. Johnson, is that the Massachusetts Supreme Judicial Court would not apply Illinois law to the policies at issue here.  Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008); see also Trump v. CASA, Inc., 606 U.S. 831, 858 n.17

(2025) ("[D]istrict court opinions lack precedential force . . . vis-à-vis other judges in the same judicial district."). Finally, Arnold emphasizes that its Pennsylvania-based former parent companies "no longer exist," arguing that this means that Pennsylvania lacks "a present interest in Arnold's insurance claims." [ECF No. 28 at 25]; see also [ECF No. 32 at 9 & n.3]. What matters, however, is "the expectation of the parties at the time the policy was issued," Millipore, 115 F.3d at 31, and Arnold cites no support for its argument that this Court may disregard the justified expectations of parties at the time of contracting simply because some of those parties no longer exist.

Ultimately, under Massachusetts choice-of-law principles, what matters in insurance coverage cases such as this one is which state has the most significant relationship to the policies themselves and the circumstances of their issuance, not which state has the most significant relationship to the claims in the underlying lawsuits or where the claims arose. Narragansett, 57 N.E.3d at 21. A different approach would nullify Massachusetts's preference for applying the law of a single state to multistate policies, which serves to insure that such policies are consistently interpreted and applied. See Millipore, 115 F.3d at 30. Thus, the fact that Arnold, one of many entities named as insureds under the policies, happens to be based in Illinois and that the claims against Arnold happen to have arisen in Illinois cannot be dispositive of the choice-of-law question. Rather, the analysis calls for applying the law of Pennsylvania, which is where the primary policy holders were domiciled, the policies were issued and likely negotiated, and the premiums on the policies were paid. This "produces coherent interstate insurance coverage[,] appears to conform to justified expectations[,] . . . and looks to the law of the State which, as to the legal issues involved, has the most significant relationship with the transaction and the parties." W.R. Grace, 555 N.E.2d at 222–23.

## IV.    CONCLUSION

For the reasons set forth above, Arnold's motion for partial summary judgment, [ECF No. 27], is **DENIED** and Liberty Mutual's cross motion for partial summary judgment, [ECF No. 30], is **GRANTED**.

**SO ORDERED.**

June 5, 2026                                        /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE